MacCONAGHY & BARNIER, PLC
JOHN H. MacCONAGHY, SBN 83684
JEAN BARNIER, SBN 231683
645 First St. West
Sonoma, CA 95476
(707) 935-3205
(707) 935-7051 (Facsimile)
Email:  macclaw@macbarlaw.com

Attorneys for Debtor
GENARO MENDOZA

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| In re: | **Case No. 09-11678** |
|---|---|
| GENARO MENDOZA, dba MENDOZA INVESTMENTS, | Chapter 11 |
| Debtor. | **DEBTOR'S DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION** |

## PRELIMINARY STATEMENT

Genaro Mendoza (the "<u>Debtor</u>") proposes this plan of reorganization (the "<u>Plan</u>") pursuant to the provisions of Chapter 11 of the Bankruptcy Code. This Plan sets forth the Debtor's proposal for the satisfaction of the Allowed Claims against him.

The Plan has been combined with the Debtor's Disclosure Statement to provide the information concerning the Debtor and the Plan required by Bankruptcy Code Section 1125. This information includes a summary of the Debtor's assets and liabilities, a summary of what the holders of Allowed Claims will receive under the Plan, a discussion of certain alternatives to the Plan, and a summary of the procedures necessary for Confirmation (approval) of the Plan. The Bankruptcy Court approved the Disclosure Statement by its Order entered on _____. However, the Court's approval of the Disclosure Statement does not constitute and endorsement of the Plan, and the Court has made no independent investigation or determination of any factual statement or dollar value set forth in the Plan and Disclosure Statement.

**THE DEBTOR URGES YOU TO READ THIS PLAN AND DISCLOSURE STATEMENT CAREFULLY. THE PROJECTED FINANCIAL INFORMATION IN THIS DISCLOSURE STATEMENT REFLECTS ASSUMPTIONS BY THE DEBTOR THAT MAY OR MAY NOT PROVE TO BE CORRECT. IN ADDITION, ESTIMATES OF ALLOWED CLAIMS MAY VARY FROM THE FINAL AMOUNTS OF ALLOWED CLAIMS. ALL OBJECTIONS TO CLAIMS ARE RESERVED**

The Debtor urges all Creditors to vote to accept the Plan and requests that the Bankruptcy Court confirm the Plan and do so, if applicable, in accordance with the provisions of Section 1129(b) of the Bankruptcy Code.

## SUMMARY OF THE PLAN

The Plan seeks to restructure the Debtor's debts in accordance with his rights and obligations under the Bankruptcy Code. As required by the Bankruptcy Code, the Plan divides the Debtor's creditors into separate classes. Each Secured Creditor has its own class. There are multi-creditor

1

Case: 09-11678    Doc# 128    Filed: 10/16/09    Entered: 10/16/09 17:37:43    Page 2 of 38

classes for general unsecured creditors, priority creditors, and administrative convenience creditors, see Article III below.

The Plan provides that through the ongoing management and sale of his real property portfolio, the Debtor will pay all Allowed general unsecured creditors in full over a period of five years. Unpaid Allowed priority creditors will be paid in full shortly after confirmation of the Plan. Allowed administrative convenience creditors – unsecured creditors owed $1,000 or less – will also be paid a lump sum dividend for the full amount of their claims shortly after confirmation.

The treatment of secured creditors varies. Secured real property tax claims are to be paid in equal bi-annual installments over five years, consistent with the non-bankruptcy five year repayment plans generally applicable in the State of California. As to the numerous different mortgage holders, a few will be cured immediately or allowed to foreclose. One will receive its collateral in satisfaction of its claim. Most other mortgage holders will receive a reamortized, modified note for the full amount of unpaid principal, interest, costs, and attorneys' fees owing as of the Effective Date of the Plan. These notes will remain secured by the existing liens and will be due in full five years from the Effective Date of the Plan. They will be paid on an interest only basis. Those Claims which were secured by prepetition first deeds of trust will generally be paid interest at 4.5% per annum or the contract rate of the prepetition debt, whichever is less. Those Claims which were secured by prepetition junior deeds of trust will generally bear interest at 6% per annum and be paid on that basis or the Net Cash Flow of the given collateral, whichever is less. Some of the secured creditors are given enhanced cross-collateralization rights. See Articles IV, VI, and VII below.

This is a summary only. The Plan is a complex document containing additional detail which should be studied in full. Additionally, the treatment summarized here applies only to "Allowed Claims", defined below. The Plan reserves the Debtor's right to dispute any claim on any basis and to bring affirmative litigation claims against any party.

# ARTICLE I

# DEFINITIONS

As used in the Plan and Disclosure Statement, the following terms shall have the respective meanings specified below:

2

"Administrative Claim" means a Claim for any cost or expense of administration of a kind specified in Section 503(b) of the Bankruptcy Code, including any actual and necessary costs and expenses of preserving the Estate incurred on or after the Petition Date and through and including the Confirmation Date, any cure amounts that must be paid in connection with the assumption of any executory contract or unexpired lease of the Debtor under Section 365 of the Bankruptcy Code, fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), and compensation for legal or other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code or otherwise.

"Administrative Claims Bar Date" means that date which is thirty (30) days following the Effective Date.

"Allowed" or "Allowed Amount" means the amount in which any Claim is allowed. Unless otherwise expressly required by the Bankruptcy Code or the Plan, the Allowed Amount of any Claim does not include interest on such Claim from or after the Petition Date.

"Allowed Administrative Claim" means all or any portion of an Administrative Claim that has either been Allowed by a Final Order or has not been objected to within the time period established by the Plan or by an order of the Bankruptcy Court.

"Allowed Claim", "Allowed Priority Claim", "Allowed Secured Claim", "Allowed Tax Claim", or "Allowed Unsecured Claim" means a Claim of the given type (a) in respect to which a proof of Claim has been filed with the Bankruptcy Court by the applicable Claims Bar Date and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; (b) as to which no proof of Claim has been filed and which has been listed on Schedule D, E or F of the Debtor's Schedules and is not listed as disputed, contingent, unliquidated or unknown as to amount, and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; or (c) which is Allowed by a Final Order. No Claim shall be considered an Allowed Claim if (1) an objection to the allowance thereof is interposed by a party in interest within the time fixed by the Plan or the Bankruptcy Court, and such objection has not been overruled by a Final Order, or (2) the Claim has already been satisfied.

"Available Cash" means any and all cash and cash equivalents owned or held by the

Case: 09-11678   Doc# 128   Filed: 10/16/09   Entered: 10/16/09 17:37:43   Page 4 of 38

Reorganized Debtor or the Estate available for payment of Claims after payment of Allowed Administrative Claims, Allowed Tax Claims, Allowed Priority Claims, Allowed Secured Claims, and after reserving for expenses incurred and anticipated to be incurred as provided for under the Plan.

"Bankruptcy Case" or "Case" means the bankruptcy case commenced by the Debtor filing with the Bankruptcy Court of his Voluntary Petition under Chapter 11 of the Bankruptcy Code, Case No. 09-11678.

"Bankruptcy Code" means Title 11, United States Code, § 101, et seq. as in effect and applicable to the Case.

"Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of California, Santa Rosa Division, or such other court exercising jurisdiction over the Case.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075, as amended, as applicable to the Bankruptcy Case.

"Claim" means any (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Claims Bar Date" means (a) with respect to claims other than those held by governmental units, October 15, 2009, (b) with respect to claims held by governmental units, December 15, 2009, and (c) with respect to Rejection Claims, the Rejection Claims Bar Date.

"Claims Objection Date" means the date ninety (90) days after the Effective Date; provided, however, that the Claims Objection Date may be extended by the Bankruptcy Court for cause upon the *ex parte* motion of the Reorganized Debtor or the Plan Administrator.

"Confirmation" means the entry by the Bankruptcy Court of the Order of Confirmation.

"Confirmation Date" means the date on which the Bankruptcy Court enters the Order of Confirmation.

4

"Confirmation Hearing" means the hearing held by the Bankruptcy Court on confirmation of the Plan as required by Section 1128(a) of the Bankruptcy Code.

"Creditor" means any entity holding a Claim against the Debtor.

"Debtor" means Genaro Mendoza, and individual.

"Debtor's Professionals" means MacConaghy & Barnier, PLC, Kalish & Gordon, LLP, Linda Ryan, Esq., Uboldi, Heinke & Velladao, LLP and/or their respective successors, if any; and such other professionals whose employment by the Debtor prior to Confirmation is approved by order of the Bankruptcy Court, if any; and following the Effective Date, any professionals engaged by the Reorganized Debtor to represent or assist him in fulfilling his duties and obligations under the Plan, including such accountant(s) as may be selected to complete the Debtor's tax returns and other required filings with governmental authorities having jurisdiction over the Reorganized Debtor or the Estate and such legal professionals as might be appropriate to assist in administering the Plan, the Bankruptcy Case and the Estate.

"Disbursing Agent" means the Reorganized Debtor or such person as is appointed Disbursing Agent in the Confirmation Order.

"Disputed Claim" means a Claim against the Debtor (a) as to which a proof of Claim has not been filed and that has been listed in the Debtor's Schedules as disputed, contingent, unliquidated, or unknown as to amount or; (b) as to which an objection or adversary proceeding has been filed within the time fixed by the Bankruptcy Court and which objection or adversary proceeding has not been withdrawn or disposed of by a Final Order.

"Distribution" means, as the context requires: (a) the cash to be provided under the Plan to the holders of Allowed Claims; or (b) the payment, transfer, delivery or deposit of cash to Creditors pursuant to the Plan.

"Distribution Date" means any date on which a Distribution is made pursuant to the Plan.

"Effective Date" means the thirtieth (30th) day following the Confirmation Date so long as the Order of Confirmation is not subject to a stay.

"Estate" means the estate created by the commencement of the Bankruptcy Case and comprised of the property described in Section 541 of the Bankruptcy Code and all property and

1 property interests acquired or arising after the Petition Date, including without limitation the

2 proceeds of any litigation.  The "Estate" as used herein shall continue to exist on and after the

3 Effective Date.

4 "Final Order" means an order entered on the docket by the Bankruptcy Court as to which no

5 timely filed notice of appeal is pending within ten (10) days after entry of such order; or, if such

6 appeal is pending, for which no stay pending appeal has been issued.

7 "Legal Rate" means forty two hundredths percent (.42%) per annum, the interest rate allowed

8 on judgments entered in federal courts pursuant to 28 U.S.C. § 1961(a) which is the weekly average

9 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal

10 Reserve System, for the calendar week preceding the Petition Date.

11 "Local Rules" means the Local Rules of the United States Bankruptcy Court for the

12 Northern District of California, as amended, as applicable to this Bankruptcy Case.

13 "Net Cash Flow" means gross rental income and expense reimbursement received from

14 tenants, less rental costs, maintenance, utilities, payroll, general and administrative expenses, a

15 management fee not to exceed 4%, capital expenditures, and senior debt service payments.

16 "Order of Confirmation"  or "Confirmation Order" means the order entered by the

17 Bankruptcy Court approving and confirming the Plan in accordance with the provisions of Chapter

18 11 of the Bankruptcy Code.

19 "Person" shall have the meaning ascribed to it in the Bankruptcy Code.

20 "Petition Date" means June 3, 2009, the date on which the Debtor filed his Voluntary

21 Petition under Chapter 11 initiating the Bankruptcy Case and on which date relief was ordered in the

22 Bankruptcy Case.

23 "Plan" means this PLAN OF REORGANIZATION (Dated_____), including any

24 modification(s) hereof and/or amendment(s) hereto that comply with Section 1127 of the Bankruptcy

25 Code and Bankruptcy Rule 3019.

26 "Priority Claim" means any  Claim entitled to priority pursuant to Section 507(a) of the

27 Bankruptcy Code, but not including an Administrative Claim or a Tax Claim.

28 "Priority Claims Objection Date" means the date thirty (30) days after the Effective Date.

Case: 09-11678   Doc# 128   Filed: 10/16/09   Entered: 10/16/09 17.37.43   Page 7 of 38

"Pro Rata" means, with respect to any Distributions to be made to the holder of an Allowed Claim , the proportion that such Allowed Claim bears to the aggregate of all outstanding Allowed Claims  in the same Class.

"Rejection Claim" means an Unsecured Claim arising from the Debtor's rejection of an unexpired lease or executory contract pursuant to the Plan or pursuant to an order of the Bankruptcy Court.

"Rejection Claims Bar Date" means the earlier of (a) thirty (30) days following the date of the Effective Date, or (b) thirty (30) days after the rejection date with respect to an executory contract or unexpired lease rejected before the Confirmation Date pursuant to a Final Order.

"Reorganized Debtor" means the Debtor from and after the Effective Date up through the entry of a final decree closing the Case.

"Schedules" means the Debtor's respective schedules of assets and liabilities consisting of Schedule "A" through "J" filed with the Bankruptcy Court pursuant to Section 521(a)(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b), as may be amended at anytime prior to Distribution.

"Secured Claim" means a Claim secured by a lien, security interest, or other charge against or interest in property in which the Debtor has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (as specified in the Plan, or if no value is specified, as determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of a holder of such Allowed Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

"Tax Claim" means any  Claim against the Debtor entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

"Unsecured Claim" means a Claim which is not a Secured Claim.

A term used in the Plan that is not herein defined but is defined in the Bankruptcy Code or

7

the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules.

## ARTICLE II

## BACKGROUND OF THE DEBTOR AND SIGNIFICANT POST PETITION EVENTS

### History of the Debtor's Business

The Debtor has been engaged in the business of owning and operating investment real property for approximately 44 years.  As of the Petition Date, his assets includee  office buildings in San Francisco  and Petaluma, 13 separate multi-family apartment buildings  (two of which are owned by his wholly owned LLCs ), a single family rental home in South San Francisco,  a commercial property in Memphis, TN formerly used as the headquarters for Federal Express Corporation which includes a 300,000 sq. ft. facility (currently unoccupied),   and 14 single family rental homes in the State of Florida.  With the exception of the Memphis, TN property, all of these properties generate rental income.  All of these properties are encumbered by one or more deeds of trust in favor of various secured lenders.

For several years prior to the Petition Date, the Debtor successfully operated under a business model through which he would buy poorly managed or poorly maintained income property – generally multifamily rentals, install quality on-site managers, perform quality physical renovations, minimize vacancies, and then resell the properties, often for a considerable profit. This business model involved purchasing properties which initially did not cash flow and funding the deficit on a short term basis with high interest junior liens.  It also required him to sell a certain number of appreciated properties periodically.  The recent, dramatic freezing of the income real estate and credit markets created a liquidity crisis, causing him to file this Chapter 11 on June 3.

### Assets and Liabilities

The Debtor filed detailed "Schedules of Assets and Liabilities" and "Statement of Financial Affairs" shortly after the Petition, which describe his assets and liabilities in detail.  The Debtor has also filed, as required by Court rules, detailed "Monthly Operating Reports" for each month following the Petition Date.  These documents are available for viewing online at the Court's

PACER website. See www.canb.uscourts.gov for instructions on how to access these materials, or contact the Debtor's counsel to receive paper copies.

In the Debtor's opinion, the information most important for Creditors is set forth on Exhibit 1. This summarizes all of the real property owned by the Debtor and in his name, including a description of the property, the date purchased, purchase price, the identity of the lenders involved, and the Debtor's current estimate of the equity in each. The actual and projected income and expenses for each of these properties in set forth in Exhibit 2.

Exhibit 1 does not include two important assets which the Debtor will also be relying on to satisfy Creditor Claims. The first is 2146 Bedford, LLC. This is a California limited liability company wholly owned by the Debtor which owns a 78 unit apartment complex in Santa Rosa, CA known as "Mountainview Villas". That property was purchased in June of 2002 for $12 Million. The Debtor believes that it is worth approximately $12,500,000 at this time. It is subject to a $9,129,330 first deed of trust in favor of J.P. Morgan Chase Bank. It is also additional collateral for the $7,500,000 blanket deed of trust in favor of First Republic Bank referenced on Exhibit 1. The Debtor is attempting to sell this property to pay down the First Republic Bank loan, so as to free up equity and cash flow on his other properties.

The second asset not shown on Exhibit 1 is Woodcreek Townhomes, LLC. This is also a California limited liability company wholly owned by the Debtor. It owns a 49 unit apartment complex in Petaluma, CA located at 619 F Street. It was purchased in June of 2008 for $6,900,000. It is subject to two deeds of trust in favor of Prudential Multi-family Lending totaling approximately $5,000,000. The Debtor estimates that the current fair market value of that property is $7,250,000. Under the Bankruptcy Code and this Plan, the equity in that property is also available to pay unsecured creditors.

**Post Petition Developments**

Since the Petition Date, the Debtor has continued to manage his affairs as a Chapter 11 "Debtor in Possession." Neither a trustee nor an official unsecured creditors committee has been appointed. Shortly after the filing of the case, the Debtor obtained various "first day" and other administrative orders from the Court, including authorization to pay certain prepetition priority wage

and benefit claims, authorization to pay all tenant security deposits as they came due in the ordinary course of business, authorization to pay certain prepetition utility bills as they came due, and authorization to retain various professionals. The Debtor also obtained authorization to use post petition rental income, known as "cash collateral", on a Court supervised budget. Confirmation of the Plan will terminate the Debtor's "cash collateral" restrictions.

Most importantly, the Debtor formalized aggressive marketing efforts following the Petition Date. With Bankruptcy Court approval, he closed a sale on the "Chancery Building" – an office building located at 564 Market St., San Francisco, CA – for $9.2 Million. He entered into escrows on certain other properties, but those sales fell through. As of the date of this Disclosure Statement and Plan, he had a pending motion for authorization to sell a 21 unit apartment building located at 550 Canal St., San Rafael, CA for $3,100,000. Additional sales efforts are ongoing.

### ARTICLE III

### <u>DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS</u>

The Allowed Claims against and Interests in the Debtor are designated and classified below for purposes of the Plan. Except to the extent that the Plan provides otherwise, a Claim or Interest that is properly includable in more than one class is classified in a particular class only to the extent that it qualifies within the description of that class, and is placed in a different class to the extent it qualifies within the description of such different class.

3.1 **Class 1 (Secured Claim of The County of Sonoma, CA).** Class 1 consists of the Allowed Claim of The County of Sonoma, or its assignee, for unpaid real and personal property taxes to the extent that such Claim constitutes an Allowed Secured Claim on the real and personal property owned by the Debtor. The Class 1 Claim is further divided into separate subclasses to reflect the Class 1 Creditor's separate Claims on separate collateral as follows: 1A – 2010 Pioneer Way, Santa Rosa, CA; 1B -- 226 Edith St., Petaluma, CA; 1C 128 -- Santa Alicia Dr., Rohnert Park, CA; 1D -- 1200 D St. Petaluma, CA; 1E – 620 E. Washington St., Petaluma, CA; 1F – 2373 Roberts Rd., Penngrove, CA.

3.2     **Class 2 (Secured Claim of The County of Alameda, CA).**  Class 2 consists of the Allowed Claim of The County of Alameda, CA or its assignee, for unpaid real and personal property taxes to the extent that such Claim constitutes an Allowed Secured Claim on the real and personal property owned by the Debtor. The Class 2 Claim is further divided into separate subclasses to reflect the Class 2 Creditor's separate Claims on separate collateral as follows: 2A – 434 Central Ave., Alameda, CA; 2B – 2265 Marina Blvd., San Leandro, CA; 2C – 935 Santa Clara Ave., Alameda, CA.

3.3     **Class 3 (Secured Claim of The County of Marin, CA).**  Class 3 consists of the Allowed Claim of The County of Marin, CA, or its assignee, for unpaid real and personal property taxes to the extent that such Claim constitutes an Allowed Secured Claim on the real and personal property owned by the Debtor.  The Class 3 Claim is further divided into separate subclasses to reflect the Class 3 Creditor's separate Claims on separate collateral as follows: 3A – 222 Montura Way, Novato, CA; 3B – 206 Caledonia St., Sausalito, CA; 3C – 195 Los Robles, Novato, CA; 3D – 550 Canal Blvd, San Rafael, CA.

3.4     **Class 4 (Secured Claim of The County of Contra Costa, CA).**  Class 4 consists of the Allowed Claim of The County of Contra Costa, or its assignee, for unpaid real and personal property taxes to the extent that such Claim constitutes an Allowed Secured Claim on the real and personal property owned by the Debtor.

3.5     **Class 5 (Secured Claim of The City and County of San Francisco, CA).**  Class 5 consists of the Allowed Claim of The City and County of San Francisco, CA, or its assignee, for unpaid real and personal property taxes to the extent that such Claim constitutes an Allowed Secured Claim on the real and personal property owned by the Debtor.

3.6     **Class 6 (Secured Claim of The County of Shelby, TN).**  Class 6 consists of the Allowed Claim of The County of Shelby, TN, or its assignee, for unpaid real and personal property taxes to the extent that such Claim constitutes an Allowed Secured Claim on the real and personal property owned by the Debtor.

3.7     **Class 7 (Secured Claim of J.P. Morgan Chase Bank).**  Class 7 consists of the Allowed Claim of J.P. Morgan Chase Bank,  or its assignee, to the extent that such Claim constitutes

an Allowed Secured Claim on certain real property owned by the Debtor. The Class 7 Claim is further divided into separate subclasses to reflect the Class 7 Creditor's separate Claims on separate collateral as follows: 7A – 2010 Pioneer Way, Santa Rosa, CA; 7B – 1600 Aster St. Antioch, CA; 7C – 206 Caledonia St., Sausalito, CA; 7D – 195 Los Robles, Novato, CA; 7E – 434 Central Ave., Alameda, CA; 7F – 2224 Derry Way, South San Francisco, CA; 7G – 935 Santa Clara Ave., Alameda, CA; 7H – "Florida Homes".

3.8 **Class 8 (Secured Claim of Banco Popular North America).** Class 8 consists of the Allowed Claim of Banco Popular North America, or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim on certain real property owned by the Debtor commonly known as 550 Canal Blvd., San Rafael, CA.

3.9 **Class 9 (Secured Claim of Countrywide Mortgage).** Class 9 consists of the Allowed Claim of Countrywide Mortgage, or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim on certain real property owned by the Debtor commonly known as 2373 Roberts Road, Penngrove, CA.

3.10 **Class 10 (Secured Claim of First Federal Savings & Loan).** Class 10 consists of the Allowed Claim of First Federal Savings & Loan, or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim on certain real property owned by the Debtor commonly known as 226 Edith St., Petaluma, CA.

3.11 **Class 11 (Secured Claim of Lam & Brown).** Class 11 consists of the Allowed Claim of Lam & Brown, or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim on certain real property owned by the Debtor commonly known as 2265 Marina Blvd., San Leandro, CA.

3.12 **Class 12 (Secured Claim of Onewest Bank).** Class 12 consists of the Allowed Claim of Onewest Bank, or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim on certain real property owned by the Debtor commonly known as 222 Montura Way, Novato, CA.

3.13 **Class 13 (Secured Claim of Presidio Bank).** Class 13 consists of the Allowed Claim of Presidio Bank, or its assignee, to the extent that such Claim constitutes an Allowed Secured

Claim on certain real property owned by the Debtor commonly known as 1200 D St., Petaluma, CA.

        3.14    **Class 14 (Secured Claim of U.S. Bank).**  Class 14 consists of the Allowed Claim of U.S. Bank National Association, as Trustee for the Registered Holders of Countrywide Commercial Real Estate Mortgage Trust 2007-MF1, Commercial Mortgage Pass-Through Certificates, Series 2007 MF1, or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim on certain real property owned by the Debtor commonly known as 128-170 Santa Alicia Dr., Rohnert Park, CA.

        3.15    **Class 15 (Secured Claim of Wells Fargo Bank).**  Class 15 consists of the Allowed Claim of Wells Fargo Bank, or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim on certain real property owned by the Debtor commonly known as 620 E. Washington St., Petaluma, CA.

        3.16    **Class 16 (Secured Claim of First Republic Bank).**  Class 16 consists of the Allowed Claim of First Republic Bank, or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim, cross-collateralized on certain real property owned by the Debtor commonly known as 3796 Lamar Ave., Memphis, TN (first deed of trust), 2010 Pioneer Way, Santa Rosa, CA (second deed of trust), 195 Los Robles Novato, CA (third deed of trust), 128-170 Santa Alicia Dr., Rohnert Park, CA (third deed of trust), and 1600 Aster Dr., Antioch, CA (third deed of trust).

        3.17    **Class 17 (Secured Claim of Anna Volfson).**  Class 17 consists of the Allowed Claim of Anna Volfson, or her assignee, to the extent that such Claim constitutes an Allowed Secured Claim on certain real property owned by the Debtor. The Class 17 Claim is further divided into separate subclasses to reflect the Class 17 Creditor's separate Claims on separate collateral as follows: 17A – 2265 Marina Blvd, San Leandro, CA; 17B – 1600 Aster St. Antioch, CA; 17C – 550 Canal St., San Rafael, CA; 17D – 195 Los Robles, Novato, CA; 17E – 434 Central Ave., Alameda, CA; 17F – 935 Santa Clara Ave., Alameda, CA; 17G – 128-170 Santa Alicia Dr., Rohnert Park, CA.

        3.18    **Class 18 (Secured Claim of GMAC Bank).**  Class 18 consists of the Allowed Claim of GMAC Bank, or its assignee, to the extent that such Claim constitutes an Allowed Secured

Claim on certain real property owned by the Debtor commonly known as 222 Montura Way, Novato, CA.

      3.19   **Class 19 (Priority Employee Wage and Benefit Claims)** .  Class 19 consists of Priority Claims for unpaid wages, salaries, and employee benefits to the extent that they are entitled to priority under Bankruptcy Code Sections 507(a)(4) and (a)(5).

      3.20   **Class 20 (Priority Consumer Deposit Claims).**  Class 20 consists of Priority Claims for consumer deposits to the extent that they are entitled to priority under Bankruptcy Code Sections 507(a)(7).

      3.21   **Class 21 (Administrative Convenience Claims).**  Class 21 consists of Allowed Non-Priority Unsecured Claims in the amount of $1,000 or less.

      3.22   **Class 22 (General Unsecured Claims).**  Class 22 consists of all Allowed Unsecured Claims against the Debtor, other than those in Class 19, 20, and 21,  including without limitation all Rejection Claims, all unsecured Claims of vendors and trade creditors for goods delivered or services provided to the Debtor prior to the Petition Date, all employee wage and benefit claims to the extent that they exceed the Allowed Priority Claim amounts, and all consumer deposit claims to the extent that they exceed the Allowed Priority Claim amounts.

### ARTICLE IV

### CLASSES OF CLAIMS NOT IMPAIRED UNDER THE PLAN

      The following classes of Claims are not impaired under the Plan and shall receive the following treatment:

      4.1   **Class 7C (Secured Claim of J.P. Morgan Chase Bank [206 Caledonia].)**  The holder of the Allowed Class 7C Secured Claim shall retain all of its lien rights under non-bankruptcy law.  In the event that the Reorganized Debtor fails to cure any default on the Class 7 C Claim as of the Effective Date, the Class 7C Claimant shall be permitted to exercise all of its State law enforcement rights with respect to the particular  collateral in question.

      4.2   **Class 7F (Secured Claim of J.P. Morgan Chase Bank [2224 Derry Way].)**  The holder of the Allowed Class 7F Secured Claim shall retain all of its lien rights under non-bankruptcy

Case: 09-11678   Doc# 128   Filed: 10/16/09   Entered: 10/16/09 17:37:43   Page 15 of 38

law.  In the event that the Reorganized Debtor fails to cure any default on the Class 7 F Claim as of the Effective Date, the Class 7F Claimant shall be permitted to exercise all of its State law enforcement rights with respect to the particular  collateral in question.

4.3 **Class 7H (Secured Claim of J.P. Morgan Chase Bank [Florida Homes].)** The holder of the Allowed Class 7H Secured Claim shall retain all of its lien rights under non-bankruptcy law.  In the event that the Reorganized Debtor fails to cure any default on the Class 7 H Claim as of the Effective Date, the Class 7H Claimant shall be permitted to exercise all of its State law enforcement rights with respect to the particular  collateral in question.

4.4 **Class 9 (Secured Claim of Countrywide Mortgage Co.)** The  holder of the Allowed Class 9 Secured Claim shall retain all of its lien rights under non-bankruptcy law.  In the event that the Reorganized Debtor fails to cure any default on the Class 9 Claim as of the Effective Date, the Class 9 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral.

4.5 **Class 10 (Secured Claim of First Federal Savings & Loan)** The  holder of the Allowed Class 10 Secured Claim shall retain all of its lien rights under non-bankruptcy law.  In the event that the Reorganized Debtor fails to cure any default on the Class 10 Claim as of the Effective Date, the Class 10 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral.

4.6 **Class 12 (Secured Claim of Onewest Bank)** The  holder of the Allowed Class 12 Secured Claim shall retain all of its lien rights under non-bankruptcy law.  In the event that the Reorganized Debtor or the Class 18 Creditor fails to cure any default on the Class 12 Claim as of the Effective Date, the Class 12 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral.

4.7 **Class 13 (Secured Claim of Presidio Bank)**.  The  holder of the Allowed Class 13 Secured Claim shall retain all of its lien rights under non-bankruptcy law.  In the event that the Reorganized Debtor fails to cure any default on the Class 13 Claim as of the Effective Date, the Class 13 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral.

Case: 09-11678   Doc# 128   Filed: 10/16/09   Entered: 10/16/09 17:37:43   Page 16 of 38

4.8 **Class 15 (Secured Claim of Wells Fargo Bank)**.  The  holder of the Allowed Class 15 Secured Claim shall retain all of its lien rights under non-bankruptcy law.  In the event that the Reorganized Debtor fails to cure any default on the Class 15 Claim as of the Effective Date, the Class 15 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral.

4.9 **Class 19 ( Priority Wage and Benefit Claims).**  Each holder of an Allowed Class 19 Priority Claim shall be paid in full paid in full in the ordinary course of business as such Claim becomes due.

4.10 **Class 20 ( Priority Consumer Deposit Claims).**  Each holder of an Allowed Class 20 Priority Claim shall be paid in full in the ordinary course of business as such Claim becomes due.

4.11 **Class 21 ( Administrative Convenience Claims).**  Each holder of an Allowed Class 21 Administrative Convenience Claim shall be paid a lump sum dividend equal the amount of its Allowed Claim from Available Cash as soon as practical after the Effective Date.

## ARTICLE V

## <u>TREATMENT OF UNCLASSIFIED CLAIMS</u>

Unclassified Claims shall be treated as follows:

5.1 **Allowed Administrative Claims.**  Except to the extent that the holder of a particular Administrative Claim has agreed to a different treatment of such Claim, each holder of an Allowed Administrative Claim shall be paid in cash, in full upon the later of (a) the Effective Date, (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Administrative Claim, and (c) if such Claim is incurred after the Petition Date in the ordinary course of the Debtor's business by a person other than an insider, within such time as payment is due pursuant to the terms giving rise to such Claim.  Any request for allowance of an Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code (including an estimation of expenses to be incurred after the Effective Date), other than by the Debtor's Professionals, must be filed on or before the Administrative Claims Bar Date or

Case: 09-11678   Doc# 128   Filed: 10/16/09   Entered: 10/16/09 17:37:43   Page 17 of 38

the holder of such Claim shall be forever barred from asserting such Claim or receiving any payment on account of such Claim.

5.2 **Tax Claims.** The holders of Allowed Claims entitled to priority under 11 U.S.C. § 507(a)(8) ("Allowed Tax Claims") will receive deferred cash payments, payable quarterly, commencing with an initial payment six months from the Effective Date, over a period not exceeding five (5) years after the Petition Date, the unpaid portion of any such claim to bear interest at the statutory rate; provided however, that Allowed Tax Claims shall be paid in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan (other than Class 20). The Reorganized Debtor reserves the right to pay Allowed Tax Claim(s) in full at any time after the Effective Date, provided that all claims entitled to higher priority pursuant to Bankruptcy Code Section 507(a) are first paid in full.

## ARTICLE VI

### TREATMENT OF CLASSES OF CLAIMS AND INTERESTS THAT ARE IMPAIRED UNDER THE PLAN

The following classes of Claims and Interests are impaired under the Plan and shall receive the following treatment:

6.1 **Class 1 (Secured Claims of The County of Sonoma.)** The holder of the Allowed Class 1 Secured Claims shall retain all of its lien rights under non-bankruptcy law and will receive deferred cash payments, payable semi-annually, commencing with an initial payment on or before April 10, 2010, over a period not exceeding five (5) years after the Petition Date, the unpaid portion of any such claim to bear interest at the statutory rate. The Reorganized Debtor reserves the right to pay any Class 1 Claim in full at any time after the Effective Date. In the event that the Reorganized Debtor defaults on its obligations under the Plan, the Class 1 Claimant may declare a default and provide written notice of such default to the Reorganized Debtor. If such default is not cured within ten (10) days of such written notice, the Class 1 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to the particular Class 1 Claim in question.

6.2 **Class 2 (Secured Claims of The County of Alameda.)** The holder of the Allowed Class 2 Secured Claims shall retain all of its lien rights under non-bankruptcy law and will receive

Case: 09-11678   Doc# 128   Filed: 10/16/09   Entered: 10/16/09 17:37:43   Page 18 of 38

deferred cash payments, payable semi-annually, commencing with an initial payment on or before April 10, 2010, over a period not exceeding five (5) years after the Petition Date, the unpaid portion of any such claim to bear interest at the statutory rate. The Reorganized Debtor reserves the right to pay any Class 2 Claim in full at any time after the Effective Date. In the event that the Reorganized Debtor defaults on its obligations under the Plan, the Class 2 Claimant may declare a default and provide written notice of such default to the Reorganized Debtor. If such default is not cured within ten (10) days of such written notice, the Class 2 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to the particular Class 2 Claim in question.

      6.3    **Class 3 (Secured Claims of The County of Marin.)**  The holder of the Allowed Class 3 Secured Claims shall retain all of its lien rights under non-bankruptcy law and will receive deferred cash payments, payable semi-annually, commencing with an initial payment on or before April 10, 2010, over a period not exceeding five (5) years after the Petition Date, the unpaid portion of any such claim to bear interest at the statutory rate. The Reorganized Debtor reserves the right to pay any Class 3 Claim in full at any time after the Effective Date. In the event that the Reorganized Debtor defaults on its obligations under the Plan, the Class 3 Claimant may declare a default and provide written notice of such default to the Reorganized Debtor. If such default is not cured within ten (10) days of such written notice, the Class 3 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to the particular Class 3 Claim in question.

      6.4    **Class 4 (Secured Claim of The County of Contra Costa.)**  The holder of the Allowed Class 4 Secured Claim shall retain all of its lien rights under non-bankruptcy law and will receive deferred cash payments, payable semi-annually, commencing with an initial payment on or before April 10, 2010, over a period not exceeding five (5) years after the Petition Date, the unpaid portion of any such claim to bear interest at the statutory rate. The Reorganized Debtor reserves the right to pay the Class 4 Claim in full at any time after the Effective Date. In the event that the Reorganized Debtor defaults on its obligations under the Plan, the Class 4 Claimant may declare a default and provide written notice of such default to the Reorganized Debtor. If such default is not cured within ten (10) days of such written notice, the Class 4 Claimant may declare a default and provide written notice of such default to the Reorganized Debtor. If such default is not cured within

Case: 09-11678   Doc# 128   Filed: 10/16/09   Entered: 10/16/09 17:37:43   Page 19 of 38

ten (10) days of such written notice, the Class 4 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its claim.

    6.5     **Class 5 (Secured Claim of The City and County of San Francisco.)**  The holder of the Allowed Class 5 Secured Claim shall retain all of its lien rights under non-bankruptcy law and will receive deferred cash payments, payable semi-annually, commencing with an initial payment on or before April 10, 2010, over a period not exceeding five (5) years after the Petition Date, the unpaid portion of any such claim to bear interest at the statutory rate.  The Reorganized Debtor reserves the right to pay the Class 5 Claim in full at any time after the Effective Date.   In the event that the Reorganized Debtor defaults on its obligations under the Plan, the Class 5 Claimant  may declare a  default and provide written notice of such default to the Reorganized Debtor.  If such default is not cured within ten (10) days of such written notice, the Class 5 Claimant may declare a default and provide written notice of such default to the Reorganized Debtor.  If such default is not cured within ten (10) days of such written notice, the Class 5 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its claim.

    6.6     **Class 6 (Secured Claim of The County of Shelby.)**  The holder of the Allowed Class 6 Secured Claim shall retain all of its lien rights under non-bankruptcy law and  will receive deferred cash payments, payable semi-annually, commencing with an initial payment on or before April 10, 2010, over a period not exceeding five (5) years after the Petition Date, the unpaid portion of any such claim to bear interest at the statutory rate.  The Reorganized Debtor reserves the right to pay the Class 6 Claim in full at any time after the Effective Date.   In the event that the Reorganized Debtor defaults on its obligations under the Plan, the Class 6 Claimant  may declare a  default and provide written notice of such default to the Reorganized Debtor.  If such default is not cured within ten (10) days of such written notice, the Class 6 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its claim.

    6.7     **Class 7A, B, D, E and G (Secured Claim of J.P. Morgan Chase Bank)**.  The holder of the Allowed Class 7A, B, D, E, and G Secured Claims shall retain its liens under non-bankruptcy law.   On the Effective Date,  or the date which the particular Class 7 Claim becomes Allowed, whichever is later, the Class 7 Claimant shall receive a cross-collateralized Modified

Promissory Note for all outstanding principal, interest, late charges, collection costs, and attorneys fees due on all of its prepetition obligations as of the Effective Date. This Modified Promissory Note shall be deemed secured by the existing liens and shall bear interest at the average non-default contract rate of the prepetition obligations and be paid monthly installments of interest only. All outstanding principal and interest payable on this Modified Promissory Note shall be due in full five (5) years from the Effective Date, unless paid in full prior to that time. This Modified Promissory Note shall further contain a provision requiring the Class 7A – G Creditor to release its lien on the sale of any particular item of collateral for a payment equal to the prepetition and post petition principal, interest, costs, and attorneys fees attributable to the particular collateral in question. In the event that there is a default in payment of this Modified Promissory Note, which default is not cured within ten (10) days written notice to the Reorganized Debtor, the Class 7 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral.

6.8 **Class 8 (Secured Claim of Banco Popular North America)**. The holder of the Allowed Class 8 Secured Claim shall retain its lien under non-bankruptcy law. In the event that the Reorganized Debtor fails to cure any default on the Class 8 Claim on or before January 15, 2010, the Class 8 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral. In the event that there is a default in payment of the obligations owing to the Class 8 Creditor, which default is not cured within ten (10) days written notice to the Reorganized Debtor, the Class 8 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral.

6.9 **Class 11 (Secured Claim of Lam & Brown)**. The holder of the Allowed Class 11 Secured Claim shall retain its lien under non-bankruptcy law. On the Effective Date, or the date which the Class 11 Claim becomes Allowed, whichever is later, the Class 11 Claimant shall receive a Modified Promissory Note for all outstanding principal, interest, late charges, collection costs, and attorneys fees due as of the Effective Date. This Modified Promissory Note shall be deemed secured by the existing lien and shall bear interest at the rate of four and five tenths percent per annum (4.5%) and be paid monthly installments of interest only. All outstanding principal and interest payable on this Modified Promissory Note shall be due in full five (5) years from the Effective Date,

Case: 09-11678   Doc# 128   Filed: 10/16/09   Entered: 10/16/09 17:37:43   Page 21 of 38

unless paid in full prior to that time.    In the event that there is a default in payment of this Modified Promissory Note, which default is not cured within ten (10) days written notice to the Reorganized Debtor, the Class 11 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral.

6.10    **Class 14 (Secured Claim of U.S. Bank, as Trustee)**.   The holder of the Allowed Class 14 Secured Claim shall retain its lien under non-bankruptcy law.   On the Effective Date,  or the date which the  Class 14 Claim becomes Allowed, whichever is later, the Class 14 Claimant shall receive a Modified Promissory Note for all  outstanding principal, interest, late charges, collection costs, and attorneys fees due as of the Effective Date. This Modified Promissory Note shall be deemed secured by the existing lien and shall bear interest at the rate of four and five tenths percent per annum (4.5%) and be paid monthly installments of interest only.  All outstanding principal and interest payable on this Modified Promissory Note shall be due in full five (5) years from the Effective Date, unless paid in full prior to that time.    In the event that there is a default in payment of this Modified Promissory Note, which default is not cured within ten (10) days written notice to the Reorganized Debtor, the Class 14 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral.

6.11    **Class 16 (Secured Claim of First Republic Bank)**.   The holder of the Allowed Class 16 Secured Claims shall retain its liens under non-bankruptcy law.   On the Effective Date,  or the date which the  Class 16 Claim becomes Allowed, whichever is later, the Class 16 Claimant shall receive a cross-collateralized Modified Promissory Note for  all  outstanding principal, interest, late charges, collection costs, and attorneys fees due as of the Effective Date. This Modified Promissory Note shall be deemed secured by the existing liens and shall bear interest at the rate of six percent (6%) per annum and be paid monthly installments of (i) interest only or (ii) the Net Cash Flow from the subject collateral, whichever is less.  All outstanding principal and interest payable on this Modified Promissory Note shall be due in full five (5) years from the Effective Date, unless paid in full prior to that time.   This Modified Promissory Note shall further contain a provision requiring the Class 16 Creditor to release its lien on the sale of any particular item of collateral pursuant to the following schedule: 3796 Lamar Ave., Memphis, TN  -- $3,500,000; 2010 Pioneer Way, Santa Rosa,

21

CA -- $2,500,000; 195 Los Robles Novato, CA -- $500,000; 128-170 Santa Alicia Dr., Rohnert Park, CA -- $250,000; and 1600 Aster Dr., Antioch, CA -- $500,000. In the event that there is a default in payment of this Modified Promissory Note, which default is not cured within ten (10) days written notice to the Reorganized Debtor, the Class 16 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral.

6.12    **Class 17 (Secured Claims of Anna Volfson)**.   The holder of the Allowed Class 17 Secured Claims shall retain her liens under non-bankruptcy law.   On the Effective Date,  or the date which the particular Class 17 Claim becomes Allowed, whichever is later, the Class 17 Claimant shall receive a cross-collateralized Modified Promissory Note for  all  outstanding principal, interest, late charges, collection costs, and attorneys fees due on all of her prepetition obligations as of the Effective Date. This Modified Promissory Note shall be deemed secured by the existing liens and shall bear interest at the rate of six percent (6%) per annum and be paid monthly installments of (i) interest only or (ii) the Net Cash Flow from the subject collateral, whichever is less.  All outstanding principal and interest payable on this Modified Promissory Note shall be due in full five (5) years from the Effective Date, unless paid in full prior to that time.    This Modified Promissory Note shall further contain a provision requiring the Class 17A – G Creditor to release her lien on the sale of any particular item of collateral for a payment equal to the prepetition and post petition principal, interest, costs, and attorneys fees attributable to the particular collateral in question.   In the event that there is a default in payment of this Modified Promissory Note, which default is not cured within ten (10) days written notice to the Reorganized Debtor, the Class 17 Claimant shall be permitted to exercise all of her State law enforcement rights with respect to her collateral.

6.13    **Class 18 (Secured Claim of  GMAC Bank)**.   As soon as practical after the Effective Date, the  Debtor shall  execute a recordable grant deed and assignment of lease of the real property collateral to Class 18 Claimant, which conveyance shall be free and clear of any liens and interests junior to the Class 18 Claimant.   This conveyance of property shall be deemed to be in full satisfaction of the Class 18 Claim.

6.14    **Class 22 (General Unsecured Claims).**    Once Unclassified Claims and Allowed Class 21 Claims have been paid their dividends, each Class 22 Allowed Claim shall be paid on a Pro

Rata Basis, with interest at the Legal Rate, from Available Cash pursuant to Article VII below, to the extent that funds are available.  Failure to pay all Class 22 Allowed Claims in full within five years of the Effective Date shall constitute a material default of the Plan.

**ARTICLE VII**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

7.1     **Post Confirmation Operation and Management of Reorganized Debtor**.   On and after the Effective Date, the Reorganized Debtor shall be free to operate his business without further supervision or control by the Bankruptcy Court and free of any restrictions imposed by the Bankruptcy Code except as provided in the Plan or by an order of the Bankruptcy Court. Specifically and without limitation, the Reorganized Debtor may sell, lease, or refinance his properties without further Order of Court.

7.2     **Retained Power to Sell Free and Clear of Liens.**   The Reorganized Debtor reserves all of his pre-confirmation rights and powers to sell his property free and clear of  liens  and interests by noticed motion pursuant to Bankruptcy Code § 363(f), as to any lien or interest whether scheduled or unscheduled, and whether perfected or unperfected.    The Court expressly reserves jurisdiction over those matters.

7.3     **Distributions.**

7.3.1     **In General.**  The Disbursing Agent shall make a first Distribution to holders of Allowed Claims as soon as practicable after the Effective Date, as required by Articles IV, V, and VI.  Thereafter, as to Class 22 Creditors, the Disbursing Agent shall make subsequent Distributions in his discretion, but not less than annually.  Distributions may be made without further Order of Court.

7.3.2     **Distribution Addresses.**  Unless the Creditor has provided the Disbursing Agent with written notice of a different address, Distributions will be sent to Creditors at the address set forth in the proofs of Claim filed with the Bankruptcy Court.  If no proof of Claim is filed with respect to a particular Claim, the Distribution will be mailed to the address set forth in the Schedules.

7.3.3     **Withholding Taxes.**  Pursuant to Section 346(h) of the Bankruptcy Code, the Disbursing Agent shall be entitled to deduct any federal, state or local withholding taxes from

23

any cash payments made with respect to Allowed Claims, as appropriate. The Disbursing Agent shall be permitted to withhold a Distribution to any Creditor that has not provided information requested by the Disbursing Agent for the purpose of fulfilling its obligations hereunder. The Disbursing Agent shall comply with all reporting obligations imposed on it by any governmental unit with respect to withholding and related taxes.

7.4 **De Minimis Distributions.** Notwithstanding any other provision of the Plan, Distributions of less than $10.00 need not be made on account of any Allowed Claim or Allowed Interest; provided that Distributions that would otherwise be made but for this provision shall carry over until the next Distribution Date until the cumulative amount to which any holder of an Allowed Claim or Allowed Interest is entitled to more than $10.00, at which time the cumulative amount of such Distributions will be paid to such holder.

7.5 **Unclaimed Distributions.** Any cash Distributions that remain unclaimed or unnegotiated for ninety (90) days following Distribution or are returned for reasons other than the absence of a current or correct address (unless a current or correct address cannot be determined after reasonable inquiry) shall become the property of the Reorganized Debtor and be considered Available Cash.

7.6 **Reservation of Avoidance Actions and Other Litigation.** The Reorganized Debtor reserves all litigation claims of any kind, including without limitation including any claims arising out of Bankruptcy Code Sections 502, 510, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, and 552, any claims or setoff rights for usury, and any claims or set offs arising out of any non-bankruptcy right under contract, tort, or statute in law or equity ("the Debtor's Reserved Litigation"). **Any Creditor holding a filed or scheduled Claim and any and all third parties are subject to potential litigation claims brought the by the Reorganized Debtor unless those claims are specifically released by the Plan**. The Debtor and the Reorganized Debtor reserve the right to object to any and all Claims.

24

7.7 **Tax Returns and Payments.** The Reorganized Debtor shall file or cause to be filed any and all delinquent and final tax returns and pay any and all taxes owed by the Debtor and the Reorganized Debtor on a timely basis (other than Tax Claims provided for under the Plan).

7.8 **Further Orders.** Upon motion by the Debtor or the Reorganized Debtor, on not less than ten (10) days' notice to registered ECF participants entitled to notice in this Case, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to facilitate consummation of the Plan.

7.9 **Insurance Policies.** To the extent any insurance policies exist in which either the Debtor and/or his personnel have an insurable or other interest in or right to make a claim, such policies shall remain available, before and after the Effective Date, to satisfy any and all Claims held by, or asserted against, the Debtor or other personnel that may be covered by such policies.

7.10 **Post-Confirmation Operating Expenses.** From and the Effective Date, the Reorganized Debtor and Plan Administrator may incur and pay operating expenses, including professional fees for post petition services, in the ordinary course of business.

7.11 **Post-Confirmation Reports, Fees, and Final Decree.**

7.11.1 **U.S. Trustee Fees.** Not later than thirty (30) days after the end of each calendar quarter that ends after the Effective Date (including any fraction thereof), the Reorganized Debtor shall pay to the United States Trustee the quarterly fee for such quarter until this case is converted, dismissed, or closed pursuant to a Final Decree, as required by 28 U.S.C. § 1930(a)(6).

7.11.2 **Post-Confirmation Reports.** Not later than thirty (30) days after the end of the calendar quarter which ends after the Effective Date, the Reorganized Debtor shall file and serve upon the United States Trustee separate quarterly post-Confirmation status reports in substantially the form provided by the United States Trustee. Further reports shall be filed thirty (30) days after the end of every calendar quarter thereafter until entry of a Final Decree, unless otherwise ordered by the Bankruptcy Court.

7.11.3 **Final Decree.** Once the Plan is substantially consummated the Reorganized Debtor shall file an application for a Final Decree as provided in the Local Rules. If the Final Decree is entered before the Reorganized Debtor is granted a discharge, the Reorganized Debtor

Case: 09-11678   Doc# 128   Filed: 10/16/09   Entered: 10/16/09 17:37:43   Page 26 of
38

may reopen the case to seek and obtain a general discharge from the Court as is more fully set forth in Article XVII below.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1 **Assumption and Assignment of Executory Contracts and Unexpired Leases.** All unexpired leases in which the Debtor is the lessor shall be assumed as of the Effective Date. Any other executory contracts and unexpired leases (it is believed there are none) shall be deemed rejected.

8.2 **Effect of Assumption of Executory Contracts and Unexpired Leases.** All executory contracts assumed prior to Confirmation or pursuant to the Plan and not otherwise rejected pursuant to the Plan shall remain in full force and effect, be unimpaired by the Plan except as specifically modified by the Plan and the Order of Confirmation, and be binding on the parties thereto.

8.3 **Adding and Removing Executory Contracts and Unexpired Leases.** The provisions of this Article VIII may be amended, with appropriate notice to those parties in interest directly affected, at any time prior to the conclusion of the hearing on Confirmation of the Plan, to add or remove executory contracts and unexpired leases to be assumed, assumed and assigned, or rejected pursuant to the Plan.

8.4 **Rejection Claims.** Rejection Claims shall be classified as Class 22 Claims. The holder of a Rejection Claim shall file with the Bankruptcy Court, and serve on counsel for the Reorganized Debtor, a proof of Claim relative to such Rejection Claim on or before the Rejection Claims Bar Date or be forever barred from asserting any such Claim or receiving any payment or other Distribution on account of such Claim.

/ / /

26

# ARTICLE IX

## FEASIBILITY OF THE PLAN

The feasibility of the Plan is premised upon two assumptions. The first of these is that the commercial real estate and credit markets will stabilize, so that the Debtor will be able to sell sufficient properties in his portfolio to eliminate or decrease his largely cross-collateralized junior secured indebtedness, particularly the $7,000,000 + First Republic Bank obligation. This, in turn, will enable the balance of his portfolio to cash flow. The second assumption is that the rental market does not significantly deteriorate, so that the Debtor can maintain his projected gross income. Based on various professional market analyses and his own experience in real estate, the Debtor believes that these assumptions are reasonably warranted.

If these assumptions are correct, the Debtor believes that he has sufficient equity in his real properties to pay all general unsecured creditors in full. The Debtor's estimated equity in his portfolio is shown on Exhibit 1. The Debtor owes undisputed general unsecured claims of approximately $1,150,000. There is another, large disputed claim of $1,500,000. Thus, even in a "worst case" scenario, the Debtor believes that he will return a 100% dividend to general unsecured creditors. Pending liquidation of sufficient assets to satisfy creditor claims, the Debtor believes that his portfolio will provide sufficient cash flow to pay all post petition obligations. A copy of the Debtors' actual and projected revenues and expenses for the calendar year 2009 is attached as Exhibit 2.

Aside from financial matters, the Debtor believes that he can comply with all technical requirements of the Bankruptcy Code necessary to confirm and substantially consummate the Plan. See Article XIV below.

# ARTICLE X

## ALTERNATIVES TO THE PLAN

10.1 **Chapter 7 Liquidation**

27

In a Chapter 7 liquidation proceeding, the Debtor's interest in any assets of the Estate would vest in a Chapter 7 trustee, who would either release them to the respective secured creditors or attempt to sell those assets to third parties and distribute any proceeds pro rata to all creditors of the estate under the priorities established by Bankruptcy Code Section 507.

The Debtor believes that the Plan is significantly more beneficial to most creditors than Chapter 7. The Debtor believes that in a Chapter 7 there is a high probability that most of his assets would be lost in foreclosure to the senior secured creditors, and the equity would be unavailable for the benefit of junior secured and unsecured creditors. There are at least two reasons for this.

First, virtually all of the Debtor's assets are high maintenance commercial real property which require intensive management by a trained staff to generate income and optimize sales value. Chapter 7 trustees have no resources to perform these functions.

Second, Section 1123 of the Bankruptcy Code gives the Debtor a number of powers to modify and restructure his secured debt, which are not available to a Chapter 11 Trustee. For example, if certain conditions are met, a Chapter 11 Debtor may reduce interest rates and modify fully amortized mortgages into "interest only" obligations, see *In re Orosco* 77 BR 246 (Bankr. N.D. Cal. 1987). This, in turn, enables the debtor to avoid loss of real property assets in foreclosure while properties are sold, and to generate cash flow to pay dividends to unsecured creditors. A Chapter 7 trustee lacks these powers.

10.2 **No Other Plans**

The Bankruptcy Code permits parties in interest other than the Debtor to propose a plan of reorganization under certain circumstances. The Plan submitted by the Debtor is the only plan of reorganization that has been proposed at this time.

### ARTICLE XI

### PROOFS OF CLAIM; OBJECTIONS

11.1 **Time for Filing Proofs of Claim.** Proofs of Claim, when required, shall be filed with the Bankruptcy Court no later than the applicable Claims Bar Date, or such Claims shall be conclusively deemed barred and disallowed.

28

11.2 **Evidence of Claim.** For purposes of any Distribution under the Plan, the Disbursing Agent shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the first Distribution Date. The Reorganized Debtor, the Disbursing Agent, and their professionals shall be entitled to recognize and deal for all purposes with only those Creditors of record with the Bankruptcy Court as of the first Distribution Date.

11.3 **Amendments to Claims.** Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, upon expiration of the applicable bar date, proofs of Claim and proofs of interest may not be filed or amended except for amendments to proofs of Claim to decrease the amount or priority thereof.

11.4 **Claim Objections.** An objection to a Priority Claim shall be filed no later than the Priority Claims Objection Date. An objection to any other Claim shall be filed no later than the Claims Objection Date. The Reorganized Debtor shall have the responsibility to review Claims filed against the Debtor, to file objections as appropriate, and to resolve Disputed Claims.

11.5 **Distributions**. Notwithstanding any provision of the Plan specifying a date or time for payments or Distributions of consideration hereunder, payments and Distributions in respect of any Claim that at such date or time is disputed, unliquidated or contingent, shall not be made until a Final Order with respect to an objection, estimation or valuation of such Claim is entered by the Bankruptcy Court, whereupon appropriate Distributions shall be made promptly.

## ARTICLE XII

## DEFAULT

If the Reorganized Debtor shall default in the performance of any of its obligations under the Plan, and shall not have cured such default within a period of thirty (30) days after receipt of written notice of default from any party in interest affected by the alleged default, then such party in interest may file a motion with the Bankruptcy Court seeking an order directing the Reorganized Debtor to perform such obligations, or such other relief as may be appropriate under the circumstances. Any

Case: 09-11678   Doc# 128   Filed: 10/16/09   Entered: 10/16/09 17:37:43   Page 30 of 38

party in interest, including the Reorganized Debtor may oppose any such motion.

## ARTICLE XIII

### CERTAIN INCOME TAX CONSEQUENCES OF DEBTOR'S PLAN

13.1 **In General**

The following is a summary of certain United States federal income tax consequences of Debtor's Plan that may be material to Creditors. This discussion is included for general information purposes only and is not intended to be, and is not, legal or tax advice to any particular Creditor. This summary is based on the current provisions of the Internal Revenue Code of 1986, as amended (the "Code"), the Income Tax Regulations (the "Regulations") and other legal authorities, all of which are subject to change, possibly with retroactive effect. No rulings from the Internal Revenue Service (the "IRS") or opinions of counsel have been or will be requested concerning the matters discussed below. The tax consequences set forth in the following discussion are not binding on the IRS or the courts and no assurance can be given that contrary provisions will not be successfully asserted. This summary does not address the taxation of the Debtor or the Creditors under state law.

TO ENSURE COMPLIANCE WITH TREASURY DEPARTMENT CIRCULAR 230, CREDITORS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON BY CREDITORS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON CREDITORS UNDER THE CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN BY DEBTOR IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF CIRCULAR 230) BY DEBTOR OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) CREDITORS SHOULD SEEK ADVICE BASED UPON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

EACH CREDITOR SHOULD CONSULT THE CREDITOR'S OWN TAX ADVISOR TO DETERMINE THE CREDITOR'S PARTICULAR U.S. FEDERAL INCOME TAX CONSEQUENCES AND OTHER TAX CONSEQUENCES TO THE CREDITOR OF DEBTOR'S PLAN, INCLUDING ANY STATE, LOCAL AND FOREIGN TAX LAWS AND THE EFFECT OF ANY CHANGES IN SUCH LAWS.

### 13.2 **Consequences to the Debtor**

The Debtor is an individual who will generally incur tax gain and losses as if he had never filed bankruptcy. The principle exception is that to the extent that any indebtedness is discharged by the Confirmation, the Debtor will not be deemed to have incurred gross income for "forgiveness of debt", as set forth in 26 U.S.C. Section 108. Accordingly, the Debtor does not believe that he will incur any income, gain or loss as a result of Debtor's Plan.

### 13.3 **Consequences to Creditors**

Any amount realized by a Creditor in satisfaction of an Allowed Claim, to the extent such amount constitutes "gross income" within the meaning of Section 61 of the Code, will be taxable to the Creditor in accordance with the Creditor's method of accounting, if not previously included in the Creditor's gross income. This would include, for example, payments for goods and services. If a Creditor previously reported as taxable income their respective Allowed Claim then the unpaid portion of the previously reported taxable income would be deductible as a bad business debt. Similarly, if a Creditor has previously deducted some or all of its Allowed Claim against either Debtor as a bad business debt, amounts received under the Plan may be reportable as ordinary income. A Creditor may be subject to regular income tax withholding or backup withholding as well.

### ARTICLE XIV
### PLAN CONFIRMATION PROCESS

### 14.1 **Voting**

Under the Bankruptcy Code, only classes of Claims that are "impaired" (as that term is defined in Section 1124 of the Bankruptcy Code) under Debtor's Plan and which will receive or retain property under the Plan are entitled to vote to accept or reject the Plan. Within each Class, only the holders of Allowed Claims may vote. In order to confirm Debtor's Plan, with regard to each impaired class of creditors, two thirds in monetary amount and a majority of the number of Allowed Claims of creditors who vote on the Plan must vote

31

to accept the Plan. The holders of Allowed Claims in Classes 1 – 8, 11, 13 – 18, and 22 are impaired. These are the only creditors who are entitled to vote on the Plan. Pursuant to Bankruptcy Code Section 1126(f), the classes of Claims that are not impaired -- Classes 7C, 7F, 7H, 9, 10, 12, 13, 15, 19, 20, and 21 -- are conclusively presumed to have accepted the Plan and are not entitled to vote.

An acceptance or rejection of Debtor's Plan may be voted by completing and signing the Ballot that accompanies Debtor's Plan and mailing, faxing, emailing or delivering it to MacConaghy & Barnier, PLC, 645 First St. West, Sonoma, California 95476 , (707) 935-7051, macclaw@macbarlaw.com. Only the Ballot should be transmitted and all Ballots must be received by the deadline set forth on the ballot.

**UNSIGNED BALLOTS, LATE BALLOTS, AND BALLOTS RECEIVED THAT ARE SIGNED BUT DO NOT DESIGNATE ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.**

### 14.2    Confirmation Standards

For a Plan to be confirmed and to be binding on all Creditors, the Bankruptcy Court must determine that the requirements of section 1129(a) of the Bankruptcy Code have been satisfied, including that at least one class of Claims that is impaired under Debtor's Plan has accepted the Plan.

### 14.3    Classification of Claims

The Bankruptcy Code requires that a plan of reorganization place each claim and interest in a class with other claims or interests that are "substantially similar." The dollar amount of a claim is usually not a basis upon which to distinguish it from other claims. Debtor believes that the classification system set forth in Debtor's Plan meets the Bankruptcy Code standard.

### 14.4    Confirmation Without Acceptance by All Impaired Classes

Section 1129(b) of the Bankruptcy Code enables the Debtor to confirm Debtor's Plan without the acceptance of one or more classes of Claims. If necessary, the Debtor will seek

Confirmation under section 1129(b) . In order to be confirmed over the rejection of a class of Allowed Claims, the Bankruptcy Court must find that Debtor's Plan does not unfairly discriminate and that it is fair and equitable as to each rejecting, impaired Class.   Section 1129(b)(2)(A),(B), and (C) contain  detailed provisions as to the meaning of "fair and equitable" as to dissenting secured creditors, unsecured creditors, and interest holders.  If necessary, the Debtor believes that he can comply with all of the requirements of Section 1129(b).

**ARTICLE XV**

**RETENTION OF JURISDICTION**

The Bankruptcy Court shall retain exclusive jurisdiction of the Bankruptcy Case (a) to enforce the provisions, purposes, and intent of the Plan; (b) to hear and determine any adversary proceedings or contested matters filed in or related to the Case; (c) to hear and determine the allowance or disallowance of Claims, (d) to fix and approve allowance of compensation and other Administrative Claims, including, if appropriate, payments to be made in connection with the Plan, (e) to adjudicate controversies arising from the terms of the Plan, (f) to hear and determine any proposed modifications of or amendments to the Plan to the extent permitted by Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, (g) to enforce or interpret the provisions of the Plan, the Order of Confirmation or any order entered by the Bankruptcy Court in the Bankruptcy Case, (h) to facilitate the consummation of the Plan, (i) to consider such other matters as may be set forth in the Plan or the Order of Confirmation,  (j) to hear and determine any Claim of any Persons of any nature whatsoever against the  Debtor's Professionals arising in or related to the Case, and (k) to enter a Final Decree closing the Bankruptcy Case.  If closed, the Bankruptcy Case may be reopened at any time to facilitate the provisions of the Plan, including the granting of a discharge to the Debtor.

## ARTICLE XVI

## EFFECT OF ORDER OF CONFIRMATION

As of the Effective Date, the effect of the Order of Confirmation shall be as follows:

16.1   **Binding Effect of Plan.**  The provisions of the confirmed Plan shall bind the Debtor, the Reorganized Debtor, any entity acquiring property under or otherwise accepting the benefits of the Plan, and every Creditor, whether or not such entity has filed a proof of Claim or Interest in the Bankruptcy Case, whether or not the Claim or Interest of such entity is impaired under the Plan, and whether or not such Creditor or entity has accepted or rejected the Plan.

16.2   **Full Satisfaction of Claims.**  Except as otherwise provided in the Plan and the Order of Confirmation, the rights afforded in the Plan shall constitute full and complete satisfaction and release of all Claims, including any interest accrued thereon from and after the Petition Date, against the Debtor, the Reorganized Debtor, the Estate, or any assets or property of the Debtor, the Reorganized Debtor and the Estate.  Except with respect to Administrative Claims, Rejection Claims, and Claims described in Bankruptcy Rule 3002(c)(3), the Confirmation Order shall be deemed to be a Final Order disallowing any claim not filed as of the Effective Date.

16.3   **Injunction.**  From  and after the Effective Date, except as otherwise provided for herein or in the Order of Confirmation, all Persons who have held, currently hold or may hold a debt, Claim or interest against the Estate, the Debtor, the Reorganized Debtor,  their  trustees, agents, employees or Professionals, or their respective property, including the property transferred pursuant to this Plan are permanently enjoined from taking any of the following actions on account of any such debt or Claim: (a) commencing or continuing in any manner any action or other proceeding against the Estate, the Debtor, the Reorganized Debtor, their  agents, employees,  or Professionals, or their respective property; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the  Estate, the Debtor, the Reorganized Debtor, their agents, employees,  or Professionals ; (c) creating, perfecting, or enforcing any lien or encumbrance

34

against the Estate, the Debtor, Reorganized Debtor, their agents, employees, or Professionals, or their respective property including the property transferred pursuant to this Plan; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Estate, the Debtor or the Reorganized Debtor; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Order of Confirmation. .

     16.4  **Limitation of Liability.**  On and after the Effective Date, neither the Debtor, the Reorganized Debtor, nor any of their respective agents, employees, and Professionals, shall have or incur any liability to any Person for any authorized act taken or authorized omission made in good faith in connection with or related to the Bankruptcy Case or the Estate, including objections to or estimations of Claims, disposition of assets, or formulating, determining not to solicit acceptances or rejections to, or confirming the Plan, or any contract, instrument, release, or other agreement or document created in connection with the Plan. Nothing herein shall be deemed to release any party from any claims for willful misconduct or gross negligence.

## ARTICLE XVII

## DISCHARGE OF THE DEBTOR

     17.1  **Grant of Discharge.**  On completion of all payments required by the Plan, or the Reorganized Debtor's compliance with the provisions of Bankruptcy Code Section 1141(d)(5), the Court shall grant the Reorganized Debtor a discharge of any and all debts of the Debtor that arose at any time before Confirmation. The discharge shall be effective as to each Claim regardless of whether a proof of claim therefor was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept this Plan.

     17.2  **Effect of Discharge.**  The discharge release provided for under this Plan shall have the effects set forth in the Bankruptcy Code including, but not limited to:

35

(a)    voiding any judgment obtained against the Debtor or Reorganized Debtor on any discharged debt; and;

(b)    operating as an injunction against the commencement or continuation of any action to collect, recover, or offset either any discharged debt from the Debtor, the Reorganized Debtor,  or its Estate or any property of the Debtor, the Reorganized Debtor,  or his Estate,  except as otherwise permitted by this Plan, the Bankruptcy Code, or order of the Court.

## ARTICLE XVIII

## MISCELLANEOUS

18.1    **Plan Interpretation.**  The headings contained in the Plan are for convenience of reference only and shall not limit or otherwise affect in any way the meaning or interpretation of the Plan.  All references in the Plan to the singular shall be construed to include references to the plural and vice versa.   All references in the Plan to any one of the masculine, feminine or neuter genders shall be deemed to include references to both other such genders.  All exhibits attached to the Plan are, by this reference, hereby incorporated into the Plan.  All references in the Plan to a Section or an Article shall mean the appropriately numbered Section or Article of the Plan.  Whenever the Plan uses the term "including," such reference shall be deemed to mean "including, but not limited to."

18.2    **Modification.**  The Debtor may propose amendments to or modifications of the Plan under Section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the conclusion of the hearing on Confirmation of the Plan.  After the Confirmation Date, the Reorganized Debtor may modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019.

18.3    **Waiver.**  After the Confirmation Date, except as otherwise specifically set forth in the Plan, any term of the Plan may be waived only by the party or parties entitled to the benefit of the term to be waived.

18.4    **Reservation of Rights.**  Neither the filing of the Plan nor any statement or provision

Case: 09-11678    Doc# 128    Filed: 10/16/09    Entered: 10/16/09 17:37:43    Page 37 of 38

contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall (a) be or be deemed to be an admission against interest, and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved.  In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without this Bankruptcy Case involving the Debtor, except with respect to Confirmation of the Plan.

DATED this 16th day of October, 2009.

MacCONAGHY & BARNIER, PLC


By: */s/ John H. MacConaghy*                    */s/ Genaro Mendoza*
John H. MacConaghy                                Genaro Mendoza
Attorneys for Debtor