UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

GENARO MENDOZA,                                                                  No. 09-11678

                                Debtor(s).
_____/

Memorandum re Plan Confirmation
_____

     Debtor Genaro Mendoza has for many decades been in the business of buying poorly managed or poorly maintained income properties, especially large apartment houses. He installs on-site managers, renovates the properties, reduces the vacancy rates and sells them. His business model involved purchasing properties which initially did not cash flow and funding the deficit on a short term basis with high interest junior liens. It also required him to sell a certain number of appreciated properties periodically. The recent downturn in real estate values and available financing forced his Chapter 11 filing. He has proposed a plan of reorganization which proposes to pay all of his creditors in full, with interest. Creditor U.S. Bank National Association, as Trustee for the Registered Holders of Countrywide Commercial Mortgage Trust 2007-MF1, Commercial Mortgage Pass-Through Certificates, Series 2007 MF1 ("U.S. Bank") objects.[1]

---

[1] Originally, confirmation was opposed by several creditors, including City National Bank, First Republic Bank, and JP Morgan Chase Bank. However, all of those objections have been resolved and it appeared when this matter first came on for hearing that the plan was consensual. However, after confirmation U.S. Bank moved for reconsideration on grounds its counsel had mis-calendared the hearing. The debtor and U.S. Bank have stipulated to consideration of U.S. Bank's objections.

1

1    U.S. Bank holds a senior deed of trust secured by a 60 - unit apartment house in Rohnert Park,
2    California. Originally, the plan called for U.S. Bank to retain its lien and be paid in full at the end of
3    five years, with monthly interest-only payments at 4.5%. The plan was modified on February 22,
4    2010, to reduce the term to three years and again on April 15, 201, to reduce the interest rate to
5    3.75%.[2] U.S. Bank objects on four grounds: that the plan is not feasible, that the plan discriminates
6    unfairly, that the interest rate is too low, and that the law does not permit the debtor to cure the default
7    under the note created when he placed a junior consensual lien on the property.

8    The court finds no merit to U.S. Banks' argument that the plan discriminates unfairly. The
9    treatment afforded to it under the plan is the same as that of numerous other banks who hold senior
10   liens on similar properties. The other banks have all accepted the plan voluntarily. While the plan
11   does provide for higher interest to some junior creditors, that only reflects the greater risk under the
12   plan borne by junior creditors.

13   There is likewise no merit to the argument that the plan is unfeasible. The uncontested
14   evidence before the court is that the apartment house is being extremely well managed. It has been
15   renovated and the vacancy rate is near zero. The cash flow is more than sufficient to cover the
16   payments to U.S. Bank, no matter what interest rate the court fixes. The holder of the junior lien has
17   agreed to accept whatever is left over after the payment to U.S. Bank, even if that means negative
18   amortization. The debtor has sold at least one large apartment house while in Chapter 11 and
19   prospects for further sales seem reasonable. The plan is very feasible, especially given the debtor's
20   long history of successful investment and property management.

21   U.S. Bank agues that the plan is not confirmable over its objection because the debtor placed a
22   junior encumbrance on the property in violation of a "due-on-sale-or-encumbrance" provision and the
23   plan cannot cure this "noncurable default." However, the court finds no merit to this position. In
24   reorganization proceedings, essentially all defaults are curable. 11 U.S.C. § 1123(a)(5)(G); *In re Entz-*

---

[2] Even this rate is considerably higher than the contract rate which, due to its variability and the low current prime rate, is set to recalculate at less than 3%.

2

*White Lumber and Supply*, *Inc.*, 850 F.2d 1338, 1341 (9th Cir.1988). This includes breach of a due-on-sale clause in a deed of trust. See *In re Coastal Equities, Inc.* 33 B.R. 898, 905 (Bankr. S.D. Cal 1983)["This Court finds that a due-on-sale clause is not something so sacrosanct that it is immune from modification in a bankruptcy setting."]. *In re Flores*, 345 B.R. 615, 617 (Bankr.N.D.Ill.2006); *In re Garcia*, 276 B.R. 627, 642-43 (Bankr.D.Ariz.2002); *In re Trapp*, 260 B.R. 267, 271-72 (Bankr.D.S.C.2001); *In re Rutledge*, 208 B.R. 624, 628 (Bankr.E.D.N.Y.1997); *In re Allston*, 206 B.R. 297, 299 (Bankr.E.D.N.Y.1997). Violation of the due-on-sale clause gives U.S. Bank a right to compensation for any economic loss, not a right to void any attempt at reorganization. The case relied upon by U.S. Bank, *In re Claremont Acquisition Corp., Inc.,* 113 F.3d 1029 (9th Cir. 1997), dealt with assumption and assignment of a franchise agreement under § 365 of the Code without a plan of reorganization, not the debtor's right to cure a default under a plan.

In this case, the violation of the due-on-sale-or encumbrance clause was of such minor moment that the current owners of the note purchased it well after the junior deed of trust was recorded and apparently thought it so unimportant that they did not even bother to check for it. Compensation by a slightly higher interest rate is a fair and equitable way of dealing with this rather inconsequential breach.

Both the debtor and U.S. Bank agree that an appropriate rate of interest should be calculated according to *Till v. SCS Credit Corp.,* 541 U.S. 465 (2004), and that the court should start with a prime rate of 3.25%. However, their experts came up with different results: the debtor's came up with a rate of 4% to 6% while that of U.S. Bank arrived at 6.15%. Both experts reached their bottom line when the plan proposed a five-year term for the note.

As is often the case with real expert testimony, the two experts in this case essentially agree with each other once inherent biases based on employer are disregarded. U.S. Bank's expert arrived at 6.15% based on the entirely false assumption that the property was being poorly managed, when in fact the evidence before the court is entirely to the contrary. Deducting the full percent added by U.S. Bank's expert based on this false assumption gives a figure of 5.15%, pretty much in line with the

3

opinion of the debtor's expert.

The debtor argues now for a lower rate based on two factors. First, the plan has been revised to call for a three-year term instead of five years. Second, the other banks have consented to a 3.75% rate. There is no other evidence to support this lower rate, except that both experts agree that some reduction is appropriate due to the shorter term.

The lower rate accepted by the other banks is some evidence for the lower rate to U.S. Bank, as it is in essence an admission against their interests. However, the value of this evidence is slight since the court has no way of knowing exactly what was on the minds of those other banks and how much of their concession was due to the persistence of debtor's counsel and a desire to avoid a protracted confirmation battle. Considering all of the risk factors used by the two experts in reaching their figures, the court finds that the appropriate rate of interest for the 5-year term originally proposed was 4.75%. The court finds that the reduction to a three-year term justifies a reduction of the interest rate to 4.25%. However, this rate should be increased by .15% due to the increased risk associated with the addition of a junior deed of trust in violation of the due-on-encumbrance provision. Accordingly, the court will confirm the plan if the interest rate payable to U.S. Bank is increased to 4.4%.

For the foregoing reasons, the court will overrule all of the objections of U.S. Bank except the objection that the interest rate is too low. If the debtor amends his plan to provide for a 4.4% interest rate to U.S. Bank, he may then submit an order confirming the plan as so amended.

Dated: April 19, 2010

Alan Jaroslovsky
U.S. Bankruptcy Judge